UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

XIU QING YOU, *a/k/a Xian Chin Yu*,

          Petitioner,

  -against-

KIRSTJEN M NIELSEN, THOMAS CIOPPA,
THOMAS DECKER, STEVE AHRENDT, MICHAEL
SAUDINO, JEFFERSON B. SESSIONS III, *in his
official capacity as the Attorney General of the United
States*, and U.S. DEPARTMENT OF HOMELAND
SECURITY,

          Respondents.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MEMORANDUM DECISION
AND ORDER

18 Civ. 5392 (GBD) (SN)

GEORGE B. DANIELS, United States District Judge:

  Petitioner Xiu Qing You, by and through counsel, filed this petition for a writ of habeas corpus under 28 U.S.C. § 2241; 28 U.S.C. § 1651, the All Writs Act; and Article I, Section 9 of the Constitution of the United States challenging his detention and removal on statutory and constitutional grounds. (*See* Am. Pet. for Writ of Habeas Corpus ("Am. Pet."), ECF No. 27.) Petitioner, a citizen of China, is the husband to a United States citizen with whom he has two children. (*Id.* ¶ 5.) On May 23, 2018, Petitioner and his wife appeared at a United States Citizenship and Immigration Services ("USCIS") office for an interview in connection with Petitioner's application to adjust his immigration status and become a lawful permanent resident. (*Id.* ¶¶ 44–47.) At the interview, Immigration and Customs Enforcement ("ICE") officers arrested Petitioner and attempted to deport him pursuant to an order of removal issued in 2002. (*Id.* ¶ 47; *id.*, Ex. 13 (Decl. of Xiu Qing You ("Pet'r's Decl.")), ECF No. 27-13, at ¶¶ 5–8; Decl. of Deportation Officer Ammar Syed ("First Syed Decl."), ECF No. 15, at ¶¶ 10, 13.)

Petitioner commenced this action on June 14, 2018 by filing his habeas petition. (*See* Pet., ECF No. 5.) After Petitioner moved for an order to show cause for a stay of removal, Judge Analisa Torres, sitting in Part 1, ordered Petitioner's release from detention and a temporary stay of removal on June 20, 2018.[1] (Order of Release, ECF No. 17.) Petitioner filed an amended habeas petition on July 6, 2018 shortly after he was released from detention. (*See* Am. Pet.) Petitioner's amended habeas petition requests that this Court (1) enjoin Respondents from removing Petitioner during the pendency of his habeas petition, (2) declare that USCIS's denial of his adjust of status application was an abuse of discretion, (3) declare that Petitioner's detention was unlawful, (4) award Petitioner costs and attorneys' fees, (5) enjoin Respondents from removing Petitioner until he has had an opportunity to avail himself of a statutorily and constitutionally adequate adjustment of status process, and (6) grant any other just and proper relief. (*Id.* at 28–29.)

Before this Court is Magistrate Judge Sarah Netburn's August 2, 2019 Report and Recommendation (the "Report"), recommending that Petitioner's habeas petition be granted with regard to his unlawful detention claim.[2] (Report, ECF No. 67, at 1.) Magistrate Judge Netburn advised the parties that failure to file timely objections to the Report would constitute a waiver of those objections on appeal. (*Id.* at 23–24.) Petitioner filed timely objections on October 18, 2019. (Pet'r's Objs. to Mag. J. Sarah Netburn's R. & R., ECF No. 74.) Respondents filed responses to such objections on December 16, 2019. (Resp'ts' Resp. to Pet'r's Objs. to the Mag. J.'s R. & R., ECF No. 85.) Respondents also filed timely objections on October 20, 2019. (Resp'ts' Objs. to the Mag. J.'s R. & R. ("Resp'ts' Objs."), ECF No. 76.) Petitioner filed responses to such

---

[1] Subsequently, on August 2, 2018, Judge Torres issued a memorandum decision to provide the reasons for granting Petitioner's requests. (Mem. Decision, ECF No. 40.) *See also You v. Nielsen*, 321 F. Supp. 3d 451 (S.D.N.Y. 2018).

[2] The relevant procedural and factual background is set forth in detail in the Report and is incorporated herein.

objections on December 16, 2019. (Pet'r's Reply to Resp'ts' Objs. to Mag. J. Sarah Netburn's R. & R., ECF No. 74.)

Having reviewed Magistrate Judge Netburn's Report, as well as the parties' objections and responses, this Court ADOPTS the Report in full and OVERRULES all objections. Accordingly, the Petition seeking a writ of habeas corpus asserting an unlawful detention claim is GRANTED.

## I. FACTUAL BACKGROUND

### A. Petitioner's Immigration History.

Petitioner is a citizen of China who has lived in the United States for nearly two decades. (Am. Pet. ¶ 5.) In January 2000, he left China and arrived in the United States at Los Angeles International Airport without any valid entry documents. (*Id.* ¶ 41; *id.*, Ex. 9 (Notice to Appear), ECF No. 27-9.) After an asylum office found that he had demonstrated a credible fear of persecution or torture, he was paroled into the United States and was required to post a $3,000 bond. (*Id.*; *id.*, Ex. 7 (I-94), ECF No. 27-7.) Subsequently, Petitioner moved to New York, and his case was transferred to 26 Federal Plaza in New York, New York. (*Id.* ¶ 41.)

On December 13, 2000, an immigration judge ("IJ") denied Petitioner's application for asylum and ordered him removed from the United States to China. (*Id.*, Ex. 10 (IJ Order), ECF No. 27-10.) Petitioner appealed, but the Board of Immigration Appeals ("BIA") affirmed the IJ's decision, rendering the removal order final. (*Id.*, Ex. 11 (Decision of the BIA), ECF No. 27-11, at 2.) However, Respondents did not execute the final removal order. (*Id.* ¶ 41.)

In the midst of his struggles with the immigration system, Petitioner met his wife, Yu Mei Chen, in 2006, and they had a traditional marriage ceremony in 2007. (*Id.* ¶ 42.) In 2013, Petitioner and his wife civilly married in New York City and began a family. (*Id.*, Ex. 2 (Marriage Certificate), ECF No. 27-2; *id.*, Ex. 3 (Birth Certificates), ECF No. 27-3.) Petitioner's wife became

3

a legal permanent resident in 2013, (*see id.*, Ex. 6 (Decl. of Yu Mei Chen ("Chen Decl.")), ECF No. 27-6, at ¶ 3), and a United States citizen in 2015, (*see id.*, Ex. 8 (Naturalization Certificate), ECF No. 27-8).

In 2013, Petitioner initiated the process for obtaining lawful presence in the United States. (*Id.*, Ex. 6 (Chen Decl.), at ¶ 5.) His wife filed an I-130 petition to classify Petitioner as her immediate relative in 2013, and after she became a United States citizen in 2015, Petitioner filed an I-485 application for an adjustment of status to lawful permanent resident. (*Id.*, Ex. 12 (I-485 Receipt Notice), ECF No. 27-12.) These applications remained pending before USCIS for approximately five years. (*Id.*, Ex. 6 (Chen Decl.), at ¶ 4.) On April 3, 2018, Petitioner filed a petition for a writ of mandamus in the United States District Court for the Eastern District of New York to compel USCIS to adjudicate his pending application. (*See id.*, Ex. 13 (Pet'r's Decl.), at ¶ 4.) *See also Chen v. Nielsen*, No. 18 Civ. 1643 (KAM) (E.D.N.Y. Apr. 3, 2018.) Twenty days later, USCIS sent Petitioner a notice scheduling his I-485 interview for May 23, 2018 at 26 Federal Plaza. (Am. Pet., Ex. 1 (Interview Notice), ECF No. 27-1.)

Petitioner and his wife attended the I-485 interview on May 23, 2018 at 26 Federal Plaza. (*Id.* ¶ 47.) The interviewing officer asked Petitioner and his wife some questions about their marriage and then asked his wife to leave the room. (*Id.*, Ex. 13 (Pet'r's Decl.), at ¶ 5.) Before being asked any questions about his I-485 application, two ICE agents came into the interview room, placed Petitioner in handcuffs, and took him to a holding room. (*Id.*) After hours of waiting, Petitioner was transferred to Bergen County Jail in Hackensack, New Jersey. (*Id.* ¶ 46.)

Later on the same day, USCIS granted the I-130 petition, (*see id.*, Ex. 4 (Approved I-130), ECF No. 27-4), but denied the I-485 application, (*see id*, Ex. 14 (I-485 Denial), ECF No. 27-14). In denying his I-485 application, USCIS found that although Petitioner was eligible for an

4

adjustment of status, negative discretionary factors—namely, his entry into the United States without documentation, unsuccessful application for asylum, disregard of the removal order, and employment without authorization—outweighed positive discretionary factors meriting a non-favorable exercise of discretion. (*Id.*)

Petitioner has since pursued relief in four independent venues: (1) his habeas petition before this Court; (2) his motion to reopen the adjustment of status decision before USCIS; (3) his motion for a stay of removal and motion to reopen his removal proceedings before the BIA; and (4) his mandamus action before the United States District Court for the Eastern District of New York.

### B. Petitioner's Habeas Petition and Part 1 Proceedings before this Court.

Petitioner initiated this action on June 15, 2018 by filing a habeas petition before this Court. (*See* Pet.) After Petitioner moved for an order to show cause for a stay of removal, Judge Torres, sitting in Part 1, granted the temporary release and stay pending the resolution of Petitioner's habeas petition, (Order of Release, ECF No. 17), which was followed by an opinion, (Opinion, ECF No. 40). *See also You*, 321 F. Supp. 3d 451. Petitioner's amended habeas petition, filed shortly after his release, principally alleges that detaining and removing Petitioner without allowing him to complete the adjustment of status process or the provisional waiver process violate the Immigration and Nationality Act ("INA"), the Due Process Clause, and the Administrative Procedure Act ("APA"), 5 U.S.C. §706(2). (Am. Pet. ¶¶ 78–89.) He further asserts that removal without opportunity for "meaningful judicial review of the unlawfulness of that removal" would violate the Suspension Clause of the Constitution. (*Id.* ¶¶ 90–91.)

### C. Petitioner's Motion to Reopen and Reconsider before USCIS.

The day after his arrest, on May 24, 2018, Petitioner filed with USCIS a motion to reopen and reconsider the denial of his I-485 application. (*See id.*, Ex. 5 (Mot. to Reopen), ECF No. 27-5.) USCIS denied the motion on November 28, 2018. (*See* Reconsideration Denial, ECF No. 64-1.) *See also* June 3, 2019 Oral Arg. Tr., ECF No. 62, at 13:14–17.)

### D. Petitioner's Motions to Stay Removal and Reopen before the BIA.

In May 2008, Petitioner filed a motion to reopen his removal proceedings, which the BIA denied as untimely. (Am. Pet., Ex. 11 (Decision of the BIA), at 3.) About two years later, in June 2010, Petitioner filed a second motion to reopen his removal proceedings, which the BIA denied as untimely and number barred. (*Id.* at 5.) In December 2015, Petitioner filed a third motion to reopen his removal proceedings, but the BIA once again denied the motion. (*See* First Syed Decl. ¶ 9.) Finally, after his arrest, Petitioner filed a fourth motion to reopen his removal proceedings and a motion for a stay of removal with the BIA on June 7, 2018, (*see id.* ¶ 11), both of which were ultimately denied, (*see* Resp'ts' Mem. of Law in Opp'n to Pet'r's Am. Pet. for Writ of Habeas Corpus, Ex. 1 (Second Decl. of Deportation Officer Ammar Syed ("Second Syed Decl.")), ECF No. 45-1, at ¶ 4). Petitioner filed a petition for review of the motion to reopen with the Second Circuit Court of Appeals. *See* 8 Pet., *Yu v. Barr*, 19-1423 (2d. Cir. May 15, 2019). Petitioner filed with the BIA an additional motion to reopen removal proceedings on September 19, 2018. (*See* Second Syed Decl. ¶ 4.)

### E. Petitioner's Mandamus Action before the Eastern District of New York.

Prior to filing the instant habeas petition, Petitioner amended his complaint in the mandamus action. *See Yu Mei Chen v. Nielsen*, 363 F. Supp. 3d 333, 337 (E.D.N.Y. 2019). The amended complaint, *inter alia*, "sought to compel the defendants to adjudicate [Petitioner]'s Motion to Reopen and asked the court to stay [Petitioner]'s removal pending adjudication of his motion to reopen and/or other appeals." *Id.* at 338.

Respondents moved to dismiss the amended complaint on the grounds that USCIS's decisions on the I-130 petitioner and the I-485 application mooted the mandamus claim and that the court lacked subject matter jurisdiction under 8 U.S.C. § 1252(a)(2)(B), which strips courts of jurisdiction to review discretionary denials of adjustment of status except when the denial raises constitutional concerns or questions of law. *Id.* at 338–39. Subsequently, Petitioner filed a "letter acknowledging that an opposition to respondents' motion to dismiss was not timely served and stating that the government's motion should be deemed unopposed." Order, *Yu Mei Chen v. Nielsen*, No. 18 Civ. 1643 (KAM) (E.D.N.Y. Sep. 4, 2018). However, in ruling on the motion to dismiss, Judge Kiyo A. Matsumoto considered Petitioner's assertions in the letter—namely, *inter alia*, that the petition for a writ of mandamus is not moot because the defendants failed to exercise any discretion in adjudicating Petitioner's I-485 application. *Nielsen*, 363 F. Supp. 3d at 339.

Judge Matsumoto dismissed the amended complaint, finding that the action was moot given that USCIS had adjudicated and denied the I-485 application. *Id.* at 340. Further, Judge Matsumoto ruled that to the extent that Petitioner sought to challenge the basis for USCIS's denial, the court lacked jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(B) to entertain such a challenge. Specifically, although Judge Matsumoto recognized that § 1252(a)(2)(B) does not prevent courts from considering nondiscretionary decisions with respect to an alien's eligibility for relief, she

concluded that Petitioner's challenge was primarily about USCIS's consideration of discretionary factors. *Id.* at 341. Petitioner's "eligibility is not an issue in this case, because USCIS clearly made a finding on eligibility." *Id.* Indeed, "courts 'lack jurisdiction to review any claim that [USCIS] erred in weighing the factors relevant to the grant or denial of adjustment of status.'" *Id.* (quoting *Guyadin v. Gonzales*, 449 F.3d 465, 469 (2d Cir. 2006)).

## II. LEGAL STANDARD

### A. Reports and Recommendations.

A court "may accept, reject, or modify, in whole or in part, the findings or recommendations" set forth in a magistrate judge's report. 28 U.S.C. § 636(b)(1)(C). The court must review *de novo* the portions of a magistrate judge's report to which a party properly objects. *Id.* The court, however, need not conduct a *de novo* hearing on the matter. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). Rather, it is sufficient that the court "arrive at its own, independent conclusion" regarding those portions of the report to which objections are made. *Nelson v. Smith*, 618 F. Supp. 1186, 1189–90 (S.D.N.Y. 1985) (citation omitted).

Portions of a magistrate judge's report to which no or "merely perfunctory" objections are made are reviewed for clear error. *See Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (citations omitted). The clear error standard also applies if a party's "objections are improper—because they are 'conclusory,' 'general,' or 'simply rehash or reiterate the original briefs to the magistrate judge.'" *Stone v. Comm'r of Soc. Sec.*, No. 17 Civ. 569 (RJS), 2018 WL 1581993, at *3 (S.D.N.Y. Mar. 27, 2018) (citation omitted). Clear error is present when "upon review of the entire record, [the court is] 'left with the definite and firm conviction that a mistake has been committed.'" *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation omitted).

## III. PETITIONER'S HABEAS CORPUS PETITION ASSERTING AN UNLAWFUL DETENTION CLAIM IS GRANTED

Magistrate Judge Netburn properly recommend that this Court should deny Petitioner's I-485 claim and provisional waiver claims for lack of jurisdiction, but that this Court should grant Petitioner's detention claim. As a remedy, Magistrate Judge Netburn correctly recommended enjoining Respondents from detaining Petitioner unless findings are made pursuant to 8 U.S.C. § 1231(a)(6). Finally, Magistrate Judge Netburn appropriately recommended that all other claims for relief should be denied.

Petitioner objects to Magistrate Judge Netburn's findings, but because his objections regurgitate the arguments that he made in his original briefs that Magistrate Judge Netburn already fully reviewed and carefully considered, they are perfunctory, and need be reviewed only for clear error. Respondents object to only one of Magistrate Judge Netburn's findings—that Petitioner's detention was unlawful—on the basis that the Report misstated the law in reaching that conclusion. However, Respondents' argument is without merit for the reasons stated in Part III(A)(3), *infra*.

### A. Petitioner's Detention was Unlawful under the Immigration and Naturalization Act ("INA").

Magistrate Judge Netburn correctly found that Petitioner's detention claim is not moot, that § 1252(g) does not strip this Court of jurisdiction to consider the claim, and that Petitioner's detention was unlawful under the INA. (Report at 12.)

#### 1. Article III Case and Controversy.

Article III of the United States Constitution limits the judicial power of federal courts to "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1. "A case that becomes moot at any point during the proceeding is no longer a 'Case' or 'Controversy' for purposes of Article III, and is outside the jurisdiction of the federal courts." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 (2018) (citation omitted). "In order to satisfy the case-or-controversy requirement, a party

9

must, at all stages of the litigation, have an actual injury which is likely to be redressed by a favorable judicial decision." *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999) (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)). "Thus, as a general rule, if an event occurs during the course of the proceedings or on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, [the court] must dismiss the case." *United States v. Blackburn*, 461 F.3d 259, 261 (2d Cir. 2006) (citation omitted).

Magistrate Judge Netburn properly determined that although Petitioner was released from detention pursuant to Judge Torres's order, his detention claim is a live controversy given that the order was not a final decision on the merits. Particularly, instead of releasing Petitioner voluntarily, Respondents released him pursuant to a *temporary* stay of removal and release from detention. Indeed, "that process was to reach *preliminary* findings based on Petitioner's likelihood of success and the potential for irreparable harm." (Report at 13 (citing *You*, 321 F. Supp. 3d at 461–62) (emphasis added).) As such, Magistrate Judge Netburn was correct to conclude that this Court should "adjudicate the case and controversy presented by Petitioner's detention." (*Id.*) *See also N.C. State Conference of the NAACP v. N.C. State Bd. of Elections*, 283 F. Supp. 3d 393, 406 n.12 (M.D.N.C. 2017) ("Mootness addresses whether the claims remain live—not whether preliminary injunctive relief has been satisfied, complied with, or violated.").

### 2. Subject Matter Jurisdiction.

Magistrate Judge Netburn appropriately recommended that this Court should exercise jurisdiction over Petitioner's claims arising from his detention. The INA significantly limits judicial review of removal orders. *See* 8 U.S.C. § 1252. Namely, § 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or

10

execute removal orders against any alien under this chapter." Magistrate Judge Netburn provides a thorough review of the case law governing the proper interpretation of the phrase "arising under" in the context of § 1252(g). The Report correctly found that the Supreme Court has held that the phrase "arising under" used in § 1252(g) is much narrower, *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999), and that it does not "sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General," *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018). Instead, the Court has read § 1252(g) as proscribing "attempts to impose judicial constraints upon prosecutorial discretion." *Villavicencio Calderon v. Sessions*, 330 F. Supp. 3d 944, 954 (S.D.N.Y. 2018). In applying this narrow reading, Magistrate Judge Netburn properly concluded that although § 1252(g) does not bar judicial review of a decision to detain an alien, it "prohibits judicial review of challenges to the discretionary decision to execute a removal order." (Report at 14.) Indeed, "[t]he detention decision—while collateral to a removal proceeding—does not implicate the Executive's discretion in commencing, adjudicating or executing a removal order." (*Id.*) *See e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (reviewing whether ICE had the statutory authority to detain an alien pursuant to a removal order beyond the statutory 90-day removal period). Accordingly, Magistrate Judge Netburn correctly determined that based on this construction, § 1252(g) does not strip this Court of jurisdiction.

### 3. Merits and Relief.

Magistrate Judge correctly found that Petitioner's detention was unlawful under the INA. The INA divides aliens subject to a final order of removal into two groups for purposes of detention: those within a 90-day removal period and those outside the removal period. *See* 8 U.S.C. § 1231(a)(1). For instance, an alien must be detained within 90 days of the date of entry of a final order of removal. Where the alien is not removed during that period, he "may be detained

beyond the removal period" if he "has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6). Absent such a determination, an alien outside of the removal period must be released subject to conditions of supervision. *See* 8 U.S.C. § 1231(a)(3).

Magistrate Judge Netburn properly determined that Petitioner's detention from May 2018 to June 2018 was unlawful under the INA because "[t]here is no indication that anyone ever determined that Petitioner was a risk to the community or of flight." (Report at 16.) For aliens like Petitioner who are outside the removal period, detention "to facilitate removal—even imminent removal—is not permitted beyond the removal period . . . except upon such findings" as required by 8 U.S.C. § 1231(a)(6). *You*, 321 F. Supp. 3d at 463; *see also* 65 Fed. Reg. 80281, 80283 ("The Attorney General construes section 241(a)(6) to authorize her to continue to detain, beyond the 90-day removal period, criminal aliens and other aliens whose release would present a risk of harm to the community or of flight by the alien."). Indeed, "[t]here is no indication that anyone ever determined that Petitioner was a risk to the community or of flight." (Report at 16.)

Respondents object to Magistrate Judge Netburn's determination by arguing that she "quoted the governing statutory provision, 8 U.S.C. § 1231(a)(6), selectively, and appeared to overlook language in that provision that directly applies to Petitioner." (Resp'ts' Objs. at 5.) Namely, Respondents—while conceding that § 1231(a)(6) permits detention beyond the removal period in circumstances where an alien poses a risk to the community or of flight—argue that the same provision also permits such detention when the alien is inadmissible, as Petitioner is here. (*Id.* at 16.) Respondents' contention is without merit. Aliens arriving at a port of entry are considered "applicants for admission" into United States. *See Cruz-Miguel v. Holder*, 650 F.3d 189, 197 (2d Cir. 2011). At that time, an alien may be (1) admitted, (2) determined inadmissible,

or (3) granted parole into the United States for humanitarian or public benefit purposes even if he might otherwise be inadmissible. *Id.* at 198. Here, Petitioner was paroled into the United States in 2000 when he was released from his initial detention upon arrival. (*See* Am. Pet. ¶ 41; *id.*, Ex. 7 (I-94).) Moreover, even assuming, *arguendo*, that Petitioner is inadmissible, he would not be eligible to apply for an adjustment of status. *See* USCIS, OMB No. 1615-0023, Instructions for Application to Register Permanent Residence or Adjustment Status, at 14 (2019) ("If you are inadmissible to the United States based on one or more grounds of inadmissibility outlined in INA section 212(a), you cannot adjust status unless you qualify for a waiver of inadmissibility or other form of relief."). There is no dispute that Petitioner is eligible for adjustment of status. It follows then that Petitioner cannot be both eligible for adjustment of status and may be detained on the basis of inadmissibility.

Accordingly, Magistrate Judge Netburn properly determined that Petitioner's detention was unlawful under the INA[3] and appropriately recommended that Respondents should be enjoined from detaining Petitioner unless a finding is made pursuant to 8 U.S.C. § 1231(a)(6).

## B. Petitioner's Adjustment of Status Claim is Denied for Lack of Jurisdiction.

Magistrate Judge Netburn correctly found that two separate provisions of 8 U.S.C. § 1252 prevent this Court from reviewing USCIS's denial of Petitioner's adjustment of status application. In particular, Magistrate Judge properly determined that § 1252(a)(5) precludes this Court from entertaining Petitioner's challenge to the denial of his adjustment of status application because, as part of the REAL ID Act of 2005, Congress directed that "the sole and exclusive means for judicial

---

[3] Additionally, Magistrate Judge correctly recommended that although Petitioner also challenges his detention under the due process clause, the detention claim should be resolved on the narrower, statutory ground than due process. *See Perez-Gonzalez v. Ashcroft*, 379 F.3d 783, 796 (9th Cir. 2004) (holding that the harm arising from petitioner's arrest and detention "can be addressed on narrower grounds than due process").

13

review of an order of removal" should be "a petition for review filed with an appropriate court of appeals." (Report at 17–18 (citing 8 U.S.C. § 1252(a)(5)).) This is primarily because a successful challenge to the denial of an adjustment of status application would render a removal order a nullity. (*Id.* (citing 8 U.S.C. §§ 1252(a)(5), (b)(9); *Freire v. United States Dep't of Homeland Sec.*, 711 F. App'x 58, 59 (2d Cir. 2018); *Singh v. USCIS*, 878 F.3d 441, 445 (2d Cir. 2018); *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011)).) Therefore, relying upon Second Circuit case law, Magistrate Judge Netburn properly found that Petitioner's challenge to the denial of his adjustment of status application is an indirect challenge to his removal order and that the jurisdictional bar applies.

Likewise, Magistrate Judge Netburn properly held that § 1252(a)(2)(B)—which prohibits judicial review of "any other decision or action . . . in the discretion of the Attorney General or the Secretary of Homeland Security," including the denial of adjustment of status—independently bars this Court from reviewing USCIS's discretionary denial of Petitioner's adjustment of status application. (Report 18–21 (quoting 8 U.S.C. § 1252(a)(2)(B)).) Further, Magistrate Judge Netburn correctly pointed out that although "Petitioner tries to escape that jurisdictional bar by arguing that his claims are purely legal," such questions of law are reviewed by the courts of appeals, not district courts. (*Id.* at 18–19 (citing 8 U.S.C. § 1252(a)(2)(D); *Shabaj v. Holder*, 718 F.3d 48, 51 (2d Cir. 2013)).)

Magistrate Judge Netburn also appropriately determined that "in the mandamus action, Judge Matsumoto of the Eastern District of New York already considered the exact same arguments made by Petitioner here before concluding that his claim is barred by § 1252(a)(2)(B) and does not qualify for the exception in § 1252(a)(2)(D)." (*Id.* at 19 (citing *Chen*, 363 F. Supp. at 339–41).) Hence, the *Chen* decision "is likely issue-preclusive as to whether § 1252(a)(2)(B)

14

bars claims arising from USCIS's discretionary denial of Petitioner's I-485 application." (*Id.* at 19 (citing *Bank v. Spark Energy Holdings, LLC*, No. 13 Civ. 6130 (ARR), 2014 WL 2805114, at *4 (E.D.N.Y. June 20, 2014); *CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 846 F.3d 35, 55–56 (2d Cir. 2017)).)

Finally, Magistrate Judge Netburn correctly observed that although Judge Torres, while sitting in Part I, relied on *Sepulveda v. Gonzales*, 407 F.3d 59 (2d Cir. 2005)[4] to conclude that § 1252(a)(2)(B) did not bar judicial review, the *Sepulveda* decision is actually inapplicable in the instant action. In *Sepulveda*, the Second Circuit recognized a separate exception for "nondiscretionary, or purely legal, decisions" with respect to an alien's eligibility for relief. *Sepulveda*, 407 F.3d at 63. Specifically, in contrast to the § 1252(a)(2)(D) exception, the *Sepulveda* exception allows district courts to review some questions of law if they arise from an eligibility determination. Here, USCIS found that Petitioner is eligible for adjustment of status. Therefore, Magistrate Judge Netburn appropriately noted that the *Sepulveda* exception is a poor fit for Petitioner's adjustment of status claim given that USCIS made a finding on eligibility.

Accordingly, Magistrate Judge Netburn correctly found that two provisions of 8 U.S.C. § 1252 bar this Court from entertaining Petitioner's adjustment of status claim.

## C. Petitioner's Provisional Waiver Claim, Which is Entirely Hypothetical, Fails to Meet the Case or Controversy Requirement of Article III.

Magistrate Judge Netburn accurately characterized Petitioner's request for stay of his removal until he completes the provisional unlawful presence waiver process as hypothetical and properly concluded that it fails to meet the case or controversy requirement of Article III.

---

[4] In *Sepulveda*, the Second Circuit recognized a separate exception for "nondiscretionary, or purely legal, decisions" with respect to an alien's eligibility for relief. *Sepulveda*, 407 F.3d at 63. Specifically, in contrast to the § 1252(a)(2)(D) exception, the *Sepulveda* exception allows district courts to review some questions of law if they arise from an eligibility determination.

15

(Report at 21.) In particular, Petitioner has not taken affirmative steps to pursue a provisional waiver process as he intends to do so after his adjustment of status application is properly adjudicated. (*See id.* at 21–22.) As Magistrate Judge Netburn correctly explained, Petitioner has two independent options for pursuing lawful immigrant status while in the United States—that is, either by applying to adjust his status through the I-485 process or by applying for a provisional waiver of inadmissibility and then traveling abroad to apply for a visa at a United States consulate. (*Id.* at 4–5, 21.) In Petitioner's case, "the first step for both processes was to file an I-130 application to have his bona fide marriage recognized. The next step for adjustment of status was to file an I-485 form, whereas the next step for a provisional waiver was to file an I-212 form." (*Id.* at 21–22.) Here, Petitioner filed an I-485 form, but never filed an I-212 form. As Magistrate Judge Netburn correctly noted, Petitioner has not applied for a provisional waiver because "his preference is to pursue adjustment of status first and, if that fails, to seek a provisional waiver." (*Id.* at 22 (citing June 3, 2019 Oral Arg. Tr., at 5:9–14 ("We would like clarity on regarding whether or not he would be able to lawfully pursue the I-485 process first.")).) Indeed, "Petitioner has only filed and received a predicate application—the I-130—which happens to be the predicate for relief under both adjustment of status and provisional waiver of inadmissibility." (*Id.* at 22.) Thus, Magistrate Judge Netburn properly concluded that Petitioner's provisional waiver claim is purely hypothetical and insufficient under Article III.

## IV. CONCLUSION

Having reviewed Magistrate Judge Netburn's Report, this Court OVERRULES Petitioner's and Respondents' objections and ADOPTS the Report in full.

The petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is therefore GRANTED IN PART AND DENIED IN PART. All of Petitioner's claims for relief are denied except for the claim arising from his detention. As a remedy, Respondents are enjoined from detaining Petitioner unless finings are made pursuant to 8 U.S.C. § 1231(a)(6).

Dated: New York, New York
      June 1, 2020

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge